And here we have, for appellant, Scott Volin. Mr. Volin. And we have Catherine Hendricks for the Washington State Department of Agriculture. Good morning. May it please the Court, I'm Scott Volin. I represent King Blossom Natural, which is a small business owned by Robert and Charlotte Brody. Their business is growing organic apples and pears. They've been so engaged since the late 1960s. There are three issues we bring before the Court today and ask for the Court's consideration regarding. First, the argument about raising constitutional issues for the first time at the trial court level, rather than at the administrative level. Second, the issue of the failure to exhaust administrative remedies. And third, whether or not the Washington administrative code provision in question is void and unconstitutional as a result. The issue that has me troubled is whether there's an administrative preclusion in the nature of race judicata because your client did not go to the state court system challenging the administrative decision. Yes, I understand it. May approach that in two parts, if I might, Judge Gould. First. Whatever makes the most sense to you during your argument. Whether or not the issue was addressed at all at the administrative level, I think it's fairly clear from the record that there were no constitutional arguments made at the administrative level. Therefore, no constitutional arguments would have arisen on appeal to the state superior court. They were not raised, argued. No evidence was gathered or analyzed at the administrative level on that issue. But are you certain of that premise? That is, I had thought that there were issues of constitutionality of regulations that couldn't be presented to an agency, but that could be ruled on by the court. Well, certainly our argument is that the agency is not situated legally to hear and decide constitutional issues. Certainly the state superior court would be so situated to hear those issues. Those issues were not heard by the administrative court in any fashion whatsoever. And so rather than appeal these issues that the administrative court did hear, King Blossom Natural chose to file a new action, if you will, in the same state superior court and bring for the first time these constitutional issues. But on a different timing, if you're going to appeal the administrative record, you have to do it within, what, 30 or 60 days or whatever. That's correct. But my understanding is, and you can correct me if I'm wrong, that at the administrative hearing there were challenges to the application of this regulation to your client because they thought that another timing sequence, so that there were procedural issues which were raised which did have constitutional overtones. I would agree that they could not have challenged in the administrative proceeding the constitutionality of the regulation itself. But the statute and the whole scheme is you raise that in your appeal to the superior court. We did, Judge Fletcher, raise the issue before the administrative tribunal about the timing and application of the regulation. Yes. Specifically, just so I might explain very briefly, the fruit in question, which was embargoed and was not permitted to be sold, was placed into controlled atmosphere storage in 1998 immediately after harvest. What happens in controlled atmosphere storage is you place the fruit into a sealed room, remove the oxygen, infuse nitrogen, and if you will, the apples go to sleep. And many months later, you can remove them and sell them as if you had sold them right after harvest. The argument made before the administrative tribunal was that the regulation in question about inspection of every lot of fruit leaving controlled atmosphere storage was enacted in the middle of that time period after the fruit was placed into cold storage and before it was removed, thereby depriving the grower in this case, King Blossom Natural, of the right to make a decision about whether or not this fruit should initially have been placed in controlled atmosphere storage at all. It was not an argument about whether the edible qualities question of the administrative provision is void unconstitutionally so for vagueness. The other question raised at the administrative level, Judge Fletcher, was whether the procedure applied to this particular grower's lots of fruit was consistent with the procedure applied to other growers' lots of fruit. And so there was a process argument made there as well. So that's got constitutional overtones. It certainly has the, since we're in a taste test case, it certainly has the flavor of the Constitution. However, strictly not, Your Honor, a constitutional argument. And again, we go ahead. It's an equal protection argument. It is in a sense an equal protection argument, but not couched in those terms, not at the administrative level. We were looking, King Blossom Natural was looking at the process to determine whether or not it had been applied as outlined, not whether or not another grower had received a more beneficial application of the process. We weren't comparing, if you will, grower to grower or making a constitutional argument on those, on that specific point. We can see. Here's my concern with your position. Yes. So I'll just put it on the table and you can deal with it anywhere you want. Absolutely. I don't think in the administrative proceeding you raised the, you know, the vagueness or the constitutional challenge that you're raising now or that you raised later. But the question in my mind is, could it have been brought not before the agency, but on an appeal to state superior court of the administrative ruling? Could you have asserted your constitutional challenge then that you brought in the second case? It's possible, Judge Gould, that we could have brought that argument in the appellate portion of this administrative case as it made its way to state superior court. Of course, I'm sure we would have been subject to the objection by the state that we hadn't raised these issues at the administrative level and so they should be barred from appellate consideration. And so rather than face that issue, King Glossom Natural brought a separate suit with distinct claims that had not been litigated previously at the administrative level. It's a fairly unique procedural setting. I understand that. It's got a little hard to analyze, though, whether they normally raise judicata or administrative preclusion would cover not only what was litigated, but what could have been litigated. Of course, Judge Gould, our argument is that at the administrative level, the administrative agency could not have taken up the decision. Right. But maybe it could have been litigated in a state superior court appeal from the agents. Yet another of the Hobson's choices that I think our client was faced with and we've described. Again, just to briefly touch on this issue of what was and what was not heard at the administrative level, clearly these constitutional issues were not briefed, not argued, and not considered by the administrative body. And in addition, at the superior court level, King Glossom Natural seeks monetary relief, something that the administrative agency cannot award and cannot provide under its own authority. How about the state superior court? Well, clearly that's the right venue again, Your Honor, for that request to be made. But that would not have been present on appeal from the administrative body, because the request for the administrative body is not for monetary relief. And so it would be, if you will, a new claim or a new request made at the state superior court level, not a review of what did the administrative tribunal do or not do with respect to this issue. It is our argument that the exhaustion of remedies question is a question of state law, and that we have cited in our brief that if the administration or administrative body cannot hear the claim in question, that it does not have to be brought before them. And it's a matter of futility. It would be futile to ask this administrative body for money or to make a determination of their own regulation's constitutionality. And finally, with respect to the provision itself, and that's really the heart of the matter here, the question is, does this Washington administrative code provision square with constitutional standards? We believe it does not. We believe there is no objective standard or measurement to enforce or to carry out the purposes of this code provision. There are no explicit standards for the term edible qualities. In fact, in the record itself, the inspectors of the Washington State Department of Agriculture don't know and cannot define what edible qualities means. In fact, one of the inspectors says, and it's in the record, edible quality means the absence of taste. Now I'm a small-town lawyer from a place where we grow apples. And so I asked a question on deposition. Well, when you say absence of taste, and it's in the record, what do you mean? Well, I mean starchiness. And I said like a spud, meaning like a potato. And the answer was yes, yes. A very hard apple with no taste will pass inspection. Our argument is, is that has nothing to do with edible qualities. It's not possible for a grower to determine whether or not their apples will pass this edible qualities test, because the inspector indicates they're looking for the absence of flavor. Counsel. Yes. If the regulation was simply that it had to meet this pressure test. Yes. And no exceptions. Yes. You think that would be perfectly okay? Well, if you're asking me as someone who represents growers, no, I don't think that would be perfectly okay. That's the consequence of your argument to me. Well, the statute itself says, Your Honor, that the fruit in question, this is red and golden delicious apples, must meet the 12 pounds per square inch pressure test, provided, however, that if they taste like a 12-pound apple, you can sell them. Yeah. So that's giving you a little leeway, not, it's giving you more than maybe you're entitled to. It's giving us a great deal of leeway, and we want that leeway. And in this case, as is in the record, these apples were already sold, already inspected and ready for delivery. I understand the tragedy of this whole situation. The buyer in this case already indicates that these apples taste like apples that they want to pay for. In fact, just so the record is clear on this, and I believe it is, these are organic apples which afford the highest price in the market, and people are not going to buy bad fruit. And this is a caveat emptor situation. But the case law that we have cited indicates, again, that if people of common intelligence would be confused about what this statute means, that certainly is a strong argument in favor of its unconstitutionality. And the inspectors themselves can't clearly define what edible qualities mean. They don't know. In addition, we have cited the Burien Bark case, which indicates that, in that case, I believe that the words in question were in limited degree, and the court found that those words in limited degree are difficult to define in a case-by-case basis, thereby the regulation in question was unconstitutional. We think in limited degree certainly provides more definition than the term edible qualities. When it's not attached to any sort of analytical matrix or framework, which would tell an inspector looking at a particular lot of fruit, how do I determine if, in fact, this fruit exhibits edible qualities? Not to mention the fact that every inspector in deposition, the record provides this, there are no regulations with respect to what they ingest, whether they smoke, whether they drink, the effect, in other words, of their own consumption upon their own ability to taste. There's no objective measurement here whatsoever. Just a inspector at one point in time makes a determination about whether or not that's an edible quality apple. And we find that that is unconstitutional. One final point, and then I'll reserve the balance of my time for rebuttal. The inspectors indicate, and I think this is quite telling about this particular code provision, that they become experienced during the testing season, that over time they gain experience by measurement, like we all would. Just by measuring their experience during the inspection season, they become more attuned to what an apple tastes like. Well, if that's true, then the grower whose fruit is inspected early in the season is receiving a different level of experience and expertise and judgment from the inspector than a grower who's receiving inspection at the end of the inspection season. That itself is such a clear example of why this particular code provision is unconstitutional on its face. And, Your Honor, I want to go back, and Judge Fletcher, and just a point that you made earlier, and I want to just talk about that historically for a moment, and then I'll sit down. Originally in Washington State, what could happen was that any grower or warehouse could provide to the Washington State Department of Agriculture a letter called a Certificate of Compliance, which says that we, warehouse or grower, tell you, Department of Agriculture, that our fruit meets the quality and standards of Washington State, and it can be sold in the ordinary course, and there would not be inspections. And so going back to whether or not this would give us more room if we did away with the edible quality portions of the test, well, we had, historically in Washington State, a tremendous amount of room, if you will, for the market to determine whether or not Washington apples are of the highest quality nationally and internationally. And year after year, season after season, it has been proved that Washington apples are at the top of the market, and organic apples are at the top of that market. And that is the kind of product that my client produced. Does the panel have any additional questions for counsel at this time? The whole argument is making me hungry. Well, I brought a box of apples. No, I didn't. We couldn't take that. It's a very interesting. Thank you. Set of issues. Sounds like you're in the same thing as wine tasting. Yeah. Well, that's next week's case. May it please the Court. My name is Catherine Hendricks, and I'm here this morning on behalf of the Washington Department of Agriculture and its former director, Jim Jessernig. The quality standards for firmness of Washington delicious apples under Washington Administrative Code 16403142 have been in effect since 1990, May of 1990. Those standards did not change in any respect in the summer of 1999. All that changed with the amendment of WAC 16461010, which was effective July 31st of 1999, was the flexibility of the manner in which apples were certified. Prior to August 1st of 1999, apples could be certified by the shipper or the packer or by a WSDA inspector. After August 1st of 1999, only a Washington State Department of Agriculture inspector could evaluate the apples and issue a certificate. Two admissions by King Blossom Natural remain central to this proceeding. First of all, they have admitted that in August of 1999, their apples were below grade under the standards that have been in effect since 1990. They also conceded at the time of the administrative proceeding that they were not challenging the validity of WAC 16461010, but merely its retrospective application. What I'd like to do is address each of the four issues you raised with Mr. Volwin, and I hope respond also to your questions. You first discussed the constitutionality and whether or not constitutional issues should properly have been raised at the administrative proceeding. RCW 3405570, subsection 3A, requires that they be raised in the administrative proceeding because, of course, on the basis of a judicial review, they can be considered by the reviewing court. And that section reads, review of agency orders and adjudicative proceedings. The court shall grant relief from an agency order in adjudicative proceeding only if it determines that the order or the statute or rule on which the order is based is in violation of constitutional  And so I think it's important to note that if they had not had King Blossom gone on and sought judicial review of the final order of the Department of Agriculture, that they would have been able to address constitutionality. But would they have had to have brought the constitutional issue before the agency in the first instance? Well, in this instance, they did, Your Honor. If you look in the supplemental excerpt of the record at page 7, they do address two constitutional issues. First of all, they talk about due process. And due process was before the Department of Agriculture. They also specifically state when they talk about not contesting the validity of the rule that is at issue, they're recognizing implicitly that they could be contesting the validity of the rule that is at issue. So I think there's no question that that, even in the administrative proceeding, they had more than the glimmer that there were issues that they could raise and could expand, if you like, as they then proceed to judicial review. And I guess I can explain, Your Honor, that the usual process is that very often people are unrepresented before the Department of Agriculture, and so these constitutional issues do, in fact, appear on review once you have judicial review of the proceeding. In the state, in the superior court? In the state superior court. But then if the constitutional issue that's raised in the state superior court was not presented to the agency, is the State's position that it's not properly presented in the superior court, or is that permissible? I believe it would depend on the circumstances, Your Honor. I think here there's no question but that they had raised a constitutional issue and that they could have proceeded with that issue. Have they raised the issue there that they raised in their superior court case? Actually, the due process issue and the retroactivity issue, we would argue the retroactivity issue has merely now been reformulated into constitutional issues, and I can talk about that in a moment. Certainly retroactivity is key to their due process argument, their substantive due process argument, their equal protection argument. So in a sense, it was there to begin with. They would have had the basis to argue from it. The issue that is completely new and is not anywhere in the testimony in the Department of Agriculture proceeding is the vagueness question. And actually, the testimony in those proceedings contradicts the testimony that's in this new case. Am I wrong that in the administrative proceeding, you're not supposed to challenge the constitutionality of the regulation itself? You can challenge the process and challenge the retroactivity and everything else, but that as to the regulation itself, that the agency hearing doesn't have the authority to find its own regulation unconstitutional? Well, although the Administrative Procedure Act, Your Honor, does include the possibility of making a declaratory challenge. So once again, in the superior court. In the superior court. Not before the agency. No. That's correct. But the assumption is always that you go through the agency proceeding on your way to the superior court proceeding. I understand that, but I guess I'm still not understanding if the assumption is that you assert before the agency the constitutional challenge that it can't act upon, or whether you just do that in the superior court portion of the case. I believe the assumption, Your Honor, is that you assert it sufficiently that you are then in the position to expand it in the superior court. And I believe that's exactly what was done in this case. Certainly, the due process claim, the retroactivity claim, and the statement about validity of the regulation itself. I mean, do remember, they conceded that the regulation was valid. So they were never challenging it in the administrative proceeding. They were, in fact, doing the reverse. But I don't think they could challenge that in the administrative proceeding, if I understand things correctly. Let me go in and answer a couple of your other questions. The monetary relief question. We certainly know that under the Equal Access to Justice Act, they would have had the ability to recover their attorney's fees. Once again, we know that in the superior court proceeding, they would have had the ability to claim damages. And the only issue is whether we would be talking about damages at all, given that KBN has consistently conceded that their apples did not pass the standards that were at issue, and so they were substandard. And in that sense, no damages would have been appropriate. But they would have had access to attorney's fees for challenging the regulation itself. The exhaustion issue, the question of whether it is Federal law or State law, I would point the Court also once again to RCW 3405-534, the Administrative Procedure Act, which also has an expectation of exhaustion within the State system. And so exhaustion really winds up being both there, both in the Federal law that's discussed in our briefing, and also within the State itself. I'd like to talk more precisely about the language concerned with the vapeness challenge to WAC 16-403-142, and also about the process as it was followed in this case. The testimony in the administrative proceeding was that the inspectors first held the apple, they pressure tested it with their hand, with their thumb. They then sliced the apple, tasted the apple. All of the apples in this case were tested, were tasted. And then as a third part, when these apples failed, they then used a machine that pressure tests the apple, and it's a calibrated machine that each individual inspector carries. It's unique to that inspector. And so I think it's inappropriate to suggest that the taste test wasn't conducted in this case. What happened was there was the physical pressure test, the taste test, the apples failed, and on appeal, the inspectors chose only to use the pressure test and not redo a taste test. But that's not what the regulation calls for. What the regulation specifies is that the exhibit – excuse me, that the apple exhibits edible qualities and textures the flesh. It doesn't talk about a taste test. It talks about exhibiting qualities. Let me ask, this is just to educate me, what would make an apple too soft when it goes into storage? Is it because it's overripe when it's picked? Yes. And so what they describe in the record, Your Honor, is the pressure test of 10, for example, that apple would be then mealy. So they should have picked earlier? Is that what their problem was? They may have held them in storage too long. And usually, since they had been picked the preceding October, the assumption is that all apples, but maybe particularly organic apples, deteriorate in storage, even though the atmosphere is controlled, and that your better course may possibly be to sell those apples in the spring while they're still – they still pass the pressure test at 12. If you look at the plaintiff's complaint in this case, they actually describe quite accurately the problem. This is from the supplemental excerpt of the record at 106. The change in regulation to full-time online State certification came about as a result of a meeting between private industry and State government over a concern that was offered to the consuming public to such a degree as to dilute the quality of and cause damage to the reputation of Washington apples. That's a statement from the plaintiff. It's followed by the apple industry was represented in those meetings by the Washington State Horticultural Association, specifically the Grade and Pack Committee, the Wenatchee Traffic Association, the Washington Growers Clearing House Association, the Yakima Valley Growers Shippers Association, and interested others. And so the assumption here is that the change in the rule was requested by private industry in order to prevent overripe soft fruit, and there was no problem at all with the rulemaking process itself. It's simply the question of when it went into effect. Retroactivity was specifically decided in the administrative proceeding. I believe collateral estoppel unquestionably makes it impossible to revisit that issue, and retroactivity is crucial to all of the other issues that have been raised, the constitutional issues. Unless you have other questions for me, I think I'll stop here. It's been a long morning for all of us. You can't call them red delicious and throw them away? You can't call them red delicious and throw them away. They lost all those apples, or did they sell them? I'm sorry, Your Honor. The record doesn't tell us that. Mr. Golan didn't make a record on that issue. It does indicate the possibility for organic juice and things like that, but there is no actual statement in the record. Thank you. Okay. Thank you very much for your argument. Mr. Golan, you have some time left. Yes, just briefly. Thank you. The only concession in this case with respect to the apples in question was that the apples did not meet the 12 pounds per square inch requirement. Not – there was no concession at any time in the record, or at any time at all, that the apples failed to meet edible qualities, that the apples did not taste good and should not be sold, therefore. The argument by the State that the phrase exhibiting edible qualities denotes or connotes a visual test is very confusing. I don't know how it's possible to look at something and determine how it will taste with any degree of certainty or objectivity. Judge McDonald and I had this discussion, that oral argument at the trial court level where he indicated, I can tell by looking at an apple whether or not it's going to taste good. I can tell by looking at a delicious that it's not going to taste very good. Well, Your Honor, here was my response, that if the court is unacquainted with organic fruit, then the court does not understand that organic fruit does not receive the luxury of chemical applications which make it appear cosmetically appealing. It's delicious fruit. It looks terrible. And people who buy organic fruit, they know that. The purchasers of that fruit and the marketers of that fruit, they know that, in fact, they trade on that very issue. They charge more for it at the grocery store. They charge substantially more for it at the grocery store. For example, at the time in question, a box of Red Delicious apples was selling for about $12 a box. An organic box of Red Delicious apples was selling upwards of $38 a box. So the difference is remarkable between the conventional and organic market. It had been going on for about six years. Organic fruit? No, the new regulation. Yes, the new regulation had been going on or has been going on for some time. The change in this case was the inspection of every lot of fruit coming out versus a certificate of compliance system where the grower, in this case, King Blossom Natural is vertically integrated. They grow, they store, they pack, and they market. So they would be the entity communicating to the Department of Agriculture that our fruit is meeting standards. And what we mean by meeting standards, it is edible fruit that people want to buy and are willing to pay the top price in the market for it. And it can be called Red Delicious. Absolutely. Did they do that when they first sent it out to the storage? Well, they don't. The answer would be no, Judge Gould, because they don't actually send it out to the storage. The storage facility in question is right off of the orchard. They bring it right in and they place it into storage. The storage is part of their facility. They are vertically integrated. They're integrated. Okay. If there are no further questions, I thank the Court for its time. Thank you both for your fine arguments. And we appreciate your coming here from Seattle to argue and have a safe trip back to Wenatchee and Spokane. Brody B. Washington, State Department of Agriculture, is submitted.
judges: B. Fletcher, Gould, King